UNITED STATES of America, Appellee,

v.

Sanford M. LYLES, Appellant.

UNITED STATES of America, Appellee,

v.

Keenan R. HART, Appellant.

Nos. 90–2359, 90–2360.

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1991.

Decided Oct. 1, 1991.

F. Lawrence Warren, Kansas City, Mo., for appellants.

Charles F. Teschner, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and ROSS and HENLEY, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

On March 21, 1990, appellants Sanford M. Lyles and Keenan R. Hart were charged with possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and use of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c). On the night of February 28, 1990, police officer Paul Hamilton received information from a confidential source that drugs were being sold at 5714 Wabash in Kansas City, Missouri. Officer Hamilton and his partners, Officers Carl Abraham and Greg Pelter, drove to the area. As they turned onto Wabash, one of the officers spotted appellants' vehicle parked in front of 5714 Wabash. Officer

Abraham shined a searchlight on appellants' car. Once the car was illuminated, appellants began acting suspiciously by bending down in the car and moving around. According to the police, the car did not appear to have a valid license plate as the temporary Kansas license tag was partially obscured by a decorative metal frame. As the officers drove up behind appellants' car and turned on the flashing red lights, the appellants' car began to drive away. The officers then ordered the driver to stop. The driver stopped and the three officers approached the car.

While Officer Abraham asked Lyles to step out of the driver's side of the car, Officer Hamilton asked Hart to step out of the passenger side of the car. The officers immediately recognized Hart as a suspect in a recent drive-by shooting. The officers also observed three bundles of United States currency through the car's hatchback window. Officers Abraham and Hamilton frisked the two appellants for weapons. The frisk revealed that Lyles had a wad of $519 cash in his pocket and Hart had $217 in cash. When the frisk was completed, the officers asked Lyles for his driver's license. According to the officer's testimony, when Lyles claimed that he did not have a license with him, the officers asked Lyles for his wallet. The officers stated that a check of the wallet revealed no license. Lyles was then placed under arrest for failing to produce a driver's license.

Simultaneously, Officer Pelter was searching the car and found a Colt .45 caliber, semi-automatic pistol and seven rounds of hydra-shock, hollow-point ammunition. After the gun was found, both appellants were placed under arrest for carrying a concealed weapon. After the arrest, but before the appellants' car was towed, the officers conducted an inventory search of the car and found crack cocaine with a street value of over $36,000 in the car's rear passenger compartment. The three stacks of currency in the hatchback totalled $2,800.

The district court [1] denied appellants' motions to suppress the evidence seized at the time of their arrest. Both appellants were subsequently convicted of possession with intent to distribute crack cocaine and with the use of a firearm during a drug trafficking offense.

On appeal, the appellants contend that the district court erred in refusing to suppress the evidence seized from their car. They claim that the officers had no articulable reasonable suspicion to question and detain them. Further, they claim that Lyles' arrest for driving without a license was nothing more than a pretense in order to conduct a warrantless search of Lyles' vehicle. Although the officers stated that they did not find a driver's license in Lyles' wallet on the night of the arrest, during an omnibus hearing, Judge Hamilton ordered the examination of Lyles' wallet which was seized the night of the arrest and maintained in police custody until the time of the hearing. The examination of the wallet in court showed that it did in fact contain Lyles' valid driver's license. The appellants, therefore, contend that the search of the car could not have been made incident to a lawful arrest.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court approved a temporary seizure for investigation "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Id.* at 30, 88 S.Ct. at 1884. The *Terry* Court also held that a police officer may conduct a patdown search of the individuals under investigation if the officer has reason to believe that such persons are armed and dangerous. *Id.* Subsequently, in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court announced that the principles articulated in *Terry* apply to protective searches of vehicles' passenger compartments as well. The Court held that police officers may search the passenger compart-

ment of an automobile, limited to those areas in which a weapon may be placed or hidden, if the officer has reasonable cause to believe that the suspect is dangerous and may gain immediate control of the weapons. *Id.* at 1049, 103 S.Ct. at 3480.

The record in the instant case establishes that on the evening of February 28, 1990, the police officers received information from a confidential informant that drugs were being sold at the residence located at 5714 Wabash. The officers knew that a search warrant for this house had previously been served and several persons had been arrested for selling drugs at this residence. The area surrounding 5714 Wabash was known to the officers as a high crime area where crack cocaine was frequently sold. Some six months earlier, a police officer had been shot less than two blocks away. Numerous search warrants had been served on several drug houses in the area and recently a person had been arrested across the street from 5714 Wabash in possession of over one-half ounce of cocaine base.

When the officers observed appellants' car at approximately 10:40 p.m. on February 28, 1990, and illuminated the car with their searchlight, they saw two people in the car bend down and start moving around as if they might be hiding something. Additionally, the car in which the appellants were sitting did not appear to have valid plates as the decorative metal frame partially obscured the temporary Kansas license tag. When the officers stopped behind the car and turned on the flashing red lights, the car began to drive away. Based on the appellants' suspicious conduct once their car was illuminated, coupled with the information the officers had just received concerning drug activity from a confidential informant, the officers reasonably concluded that appellants might be involved in criminal activity. In these circumstances, it would have been "poor police work" if the officers had failed to investigate the appellants' suspicious activities. *See Unit-*

---

**1.** The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

ed States v. Lego, 855 F.2d 542, 544 (8th Cir.1988) (citing *Terry, supra,* 392 U.S. at 23, 88 S.Ct. at 1881). Based on the facts known to the officers at the time they stopped the car, we conclude that the officers had an articulable reasonable suspicion that the occupants of the car had been or were engaged in criminal activity.

■ We also conclude that the officers' search of those portions of the car to which the appellants had immediate access was proper as part of the investigative stop under *Michigan v. Long, supra.* Because weapons and violence are frequently associated with drug transactions, and because the officers recognized Hart as a person possibly involved in a drive-by shooting, the officers reasonably believed that these individuals were armed and dangerous. *See United States v. Brown,* 913 F.2d 570, 572 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 590, 112 L.Ed.2d 594 (1990).

■ Upon finding the weapon in the glove compartment, both appellants were placed under arrest for carrying a concealed weapon. After the arrest the officers inventoried the car and found crack cocaine in the car's rear passenger compartment, along with $2,800 in cash. This inventory search was reasonable under the fourth amendment as incident to the lawful impoundment of the vehicle. *United States v. Davis,* 882 F.2d 1334, 1338 (8th Cir.1989); *South Dakota v. Opperman,* 428 U.S. 364, 373, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976).[2]

■ Appellant Hart argues that the evidence was insufficient to prove that he had knowledge and control of the weapon or the drugs and therefore the evidence cannot sustain his conviction. In reviewing the sufficiency of the evidence to support a conviction, the court must review the evidence in the light most favorable to the verdict, accepting as established all reasonable inferences tending to support the ver-

dict. *United States v. Cortez,* 935 F.2d 135, 143 (8th Cir.1991).

The government charges that Hart was not just an unsuspecting passenger in the car, but that he, too, was making furtive movements when the officers illuminated the car, thereby creating the inference that Hart was also attempting to conceal contraband. The gun was discovered in the glove compartment which was directly in front of where Hart was sitting. Moreover, after the arrest, Hart repeatedly offered to take the car, thereby supporting the inference that Hart was aware that the drugs were in the car.

Based on this evidence and the reasonable inferences to be drawn therefrom, we conclude that sufficient evidence existed to support Hart's conviction.

■ Finally, appellants argue that they were denied a two-level reduction in their sentences under section 3E1.1 of the Sentencing Guidelines because they refused to discuss their case pending appeal of their convictions. The appellants contend that the district court's interpretation of their refusal to discuss their case as an unwillingness to accept responsibility for their alleged conduct constituted a violation of their fifth amendment right against self-incrimination.

All the circuits that have addressed a facial challenge to section 3E1.1 on fifth amendment grounds have concluded that section 3E1.1 does not violate the constitution. *See United States v. Cordell,* 924 F.2d 614, 619 (6th Cir.1991), and cases cited therein. In *United States v. Crawford,* 906 F.2d 1531, 1534 (11th Cir.1990), the Eleventh Circuit reasoned that "the acceptance of responsibility provision of the federal sentencing guidelines ... does not violate either the Fifth or Sixth Amendment, but merely formalizes and clarifies a tradition of leniency extended to defendants

---

**2.** Based on our conclusion that the officers had an articulable reasonable suspicion to justify a *Terry* stop, we need not address the appellants' argument that Lyles' initial arrest for failure to produce a valid driver's license was a pretext to further search the appellants' car and person.

We have concluded that the weapon, which formed the basis of appellants' arrest for carrying a concealed weapon, was discovered pursuant to a valid *Terry* investigation. Thereafter, the drugs and money were discovered pursuant to a valid arrest.

who express genuine remorse and accept responsibility for their wrongs."

We are persuaded by the reasoning employed by these courts and accordingly reject appellants' constitutional challenges to section 3E1.1 of the Sentencing Guidelines.

Based on the foregoing, the convictions and sentences of the appellants are affirmed.