UNITED STATES of America, Appellee,

v.

Roderick L. GARRETT, Appellant.

UNITED STATES of America, Appellee,

v.

Joe Louis WILLIAMS, Appellant.

Nos. 90–3092, 91–1016.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 7, 1992.

Decided April 9, 1992.

**744**

Christopher Harlan and Brian Gepford, Kansas City, Mo., argued, for appellants.

. Marietta Parker, Kansas City, Mo., argued, for appellee.

Before ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

. ARNOLD, Chief Judge.

 This appeal arises from the defendants' convictions on various drug and firearms violations.[1]  Williams alleges that the trial court erred when it denied his out-of-time motions to suppress evidence.  In addition, he argues that he was charged in violation of the Double Jeopardy Clause and that he was denied effective assistance of counsel as required by the Sixth and Fourteenth Amendments.  Garrett challenges the sufficiency of the evidence against him and claims that the trial court erred when it failed to grant his motion for a mistrial or severance based upon the antics of Williams and his counsel.  Finding no merit in these contentions, we affirm.

### I.

On May 15, 1990, the Kansas City police, acting on information received from a reliable informant, obtained a search warrant for 6900 Walrond targeting guns, drugs, and money.  That evening, Detective Poletis drove to that location in preparation for the execution of the search warrant.  As he arrived, Detective Poletis saw a blue Cadillac limousine pull up to the house.  Williams got out of the limousine from the driver's side and went up to the front porch.  Detective Poletis continued driving past the house and circled the block in order to avoid being seen.  Upon returning to 6900 Walrond, the detective saw Williams re-enter the limousine and drive away.  Detective Poletis also saw at least one other person in the car, seated in the front passenger seat.

Detective Poletis, having personal knowledge that Williams's driver's license was suspended, began following the limousine.  With the assistance of several unmarked vehicles, a moving surveillance was conducted.  During the surveillance, the limousine stopped at a known "drug house."  Williams was seen walking up to the house and staying for a brief time.  Upon returning to the limousine, Williams drove to a nearby Burger King and briefly entered the parking lot.  After leaving the Burger King, the limousine proceeded to Prospect Avenue, where it turned to head south.  At that point, Detective Poletis, acting on his knowledge that Williams was driving with a suspended license, ordered uniformed officers to stop the car.  A marked car pulled in behind the limousine and activated its red grille lights.  Instead of pulling over, however, the limousine accelerated, made two quick left-hand turns, and entered an Amoco service station.  The limousine stopped between the gas pumps and the food shop, where Williams got out and began moving rapidly towards the food

---

[1]  Garrett was charged with possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1), (b)(1), and (b)(1)(B); use of a firearm in relation to drug trafficking, 18 U.S.C. § 924(c); and possession of a firearm by a felon, 18 U.S.C. § 922(g)(1) and § 924(a)(2).

Williams was charged with two counts of possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(A), and (B); and two counts of use of a firearm in relation to drug trafficking, 18 U.S.C. § 924(c).

shop. Before reaching the food shop, however, he was arrested.

As Williams was being taken into custody, another uniformed officer took up position by the limousine to secure its occupants. While in position, the officer saw the right-front passenger door open approximately eight to twelve inches. The officer ordered the passenger out of the car. As this was occurring, the officer observed the passenger bent moderately forward at the waist with his arms outstretched. At the same time, he was making eye contact with the officer. After approximately 15 to 45 seconds, the passenger, with the assistance of two officers, was forcibly removed from the car and placed under arrest. The passenger was later identified as Roderick Garrett. Two other passengers in the rear of the car were also taken into custody.

After securing the vehicle and its occupants, the officers returned to 6900 Walrond to conduct their search. Inside the house, they found a 9mm. semi-automatic gun, 84.48 grams of crack cocaine, scales, a police scanner, two inoperable shotguns, and various documents belonging to the defendants.

While the search of the house was being conducted, the limousine was subjected to an exterior search by a drug-sniffing police dog. When the dog reacted positively to the front passenger door, the police obtained a warrant to search the limousine. The dog was then placed inside the vehicle, where it alerted to the front passenger arm rest and the dashboard area of the glove compartment. A search of these areas revealed approximately 36 grams of crack cocaine located behind a reflector light in the arm rest and a .38 caliber handgun hidden behind the dashboard.

At trial, Garrett was represented by the public defender, and Williams was represented by retained counsel, Leonard Hughes. Before trial, the government filed a motion to determine the professional competence of Mr. Hughes. Williams was presented with transcript excerpts from a trial in which Mr. Hughes volunteered to the court that he had not acted as competent counsel.[2] Williams was then asked whether he still wanted to retain Hughes as counsel. After being informed that other counsel could be secured for him at no cost, Williams chose to continue with Hughes. After that hearing, Hughes filed several motions on Williams's behalf and proceeded to conduct Williams's defense during the trial.

## II.

Garrett's first claim is a novel one. He argues that the District Court[3] erred in denying his motion for a mistrial and/or a severance based upon the actions of his codefendant's counsel, Mr. Hughes. Garrett alleges that the actions of Hughes, as well as those of his "paralegal," a disbarred attorney named Harold Holliday, substantially prejudiced his case.

A review of the transcript indicates that Hughes may have used some unorthodox methods in conducting his defense of Williams. These methods included filing out-of-time motions without any excuse, conducting noisy and potentially disruptive conversations with his client and his paralegal during the course of the trial, apparently failing to attend a bench conference involving his co-counsel and government counsel, leaving the courtroom without being excused by the trial judge (and prior to the dismissal of the jury),[4] and introducing incriminating testimony concerning Garrett while presenting Williams's defense. For their part, both government counsel and the Court acknowledged the rather unorthodox methods employed by Hughes. Government counsel, while opposing the motion for a mistrial, stated, "... there has been perhaps more animation at Mr.

---

**2.** That revelation by Mr. Hughes resulted in a new trial for his client in that matter.

**3.** The Hon. D. Brook Bartlett, United States District Judge for the Western District of Missouri.

**4.** In an effort to separate himself from Williams (and the antics of Hughes), Garrett and his attorney moved to a different trial table during the *voir dire* of the jury. They apparently remained at this table for the duration of the trial.

Williams's counsel table than what may be normally seen in this courtroom." Tr. 469. The Court noted, "I am somewhat astounded at that kind of behavior, but I figured ... they can cook their own goose if they want to...." Tr. 468.

"[T]he decision whether to grant a mistrial, which is a very drastic remedy, lies within the sound discretion of the district court." *United States v. Elem*, 845 F.2d 170, 172 (8th Cir.1988). A "denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown." *United States v. Davis*, 747 F.2d 440, 443 (8th Cir.1984). "The mere fact that there is hostility among the defendants, or one defendant may try to save himself at the expense of another is not sufficient grounds to require separate trials." *United States v. Boyd*, 610 F.2d 521, 526 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). Finally, a severance would not be required "merely because the evidence against one defendant is more damaging than the evidence against another." *United States v. Davis*, 882 F.2d 1334, 1340 (8th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990) (citation omitted). Instead, the defendant "must make a showing of real prejudice by demonstrating that the jury was unable to compartmentalize the evidence as it related to [him and his co-defendant]." *United States v. Givens*, 712 F.2d 1298, 1300 (8th Cir.1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1005, 79 L.Ed.2d 237 (1984) (citation omitted). This is not such a case.

While Hughes employed some unorthodox methods in defense of Williams, it is clear that Garrett's attorney, Christopher Harlan, did a thorough, professional job. The trial judge noted that Harlan "conducted [himself] and the defense of [his] client in a professional, highly effective manner.

[He] presented what, it seems to me, is the kind of demeanor, approach, a sense of seriousness which has got to help [his] client." Tr. 468. In addition, the defenses used by the defendants were not so antagonistic as to merit a severance. While Williams maintained that the house where the cocaine was found was a "party house" which was accessible to many people, Garrett was not charged with offenses arising from the articles located inside the house. Moreover, the defense which Garrett utilized, a general denial, did not conflict with that of Williams. See *Boyd, supra.*

Finally, the danger that the jurors would be unable to compartmentalize the evidence was minimal. The trial began on the afternoon of July 23, 1990, and ended on the morning of July 26, 1990. The trial did not involve any complex issues, and it involved two defendants and five counts. "In such a case a jury undoubtedly is capable of properly compartmentalizing the evidence." *Davis*, 882 F.2d at 1340. Finally, the trial judge, who was present during the proceedings and was able to observe the demeanor of the attorneys, the witnesses, and the jury, noted:

> What I have seen during this trial has not caused me to believe that anybody's rights are at risk. There has been a different approach demonstrated and on the record I have stated to Mr. Hughes my views on one particular matter and I don't think that that particular matter has affected Mr. Garrett's right to a fair trial. And I don't believe that anything I've seen has deprived Mr. Garrett of the right to a fair trial.

Tr. 471–472. Given these comments, coupled with the judge's instructions to the jury, and the defense provided to Garrett by Harlan, we hold that the trial court did not err in denying Garrett's motion for a mistrial or severance.[5]

5. On the issue of mistrial or severance based upon the unorthodox actions of Mr. Hughes, we note the Second Circuit's decision in *United States v. Bubar*, 567 F.2d 192 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977). In that case, as in the present one, several co-defendants sought severance from another defendant based upon the antics of that defendant's counsel during the trial. The co-defendants argued that the conduct of Bubar's attorney "distracted the jury's attention from their cases and made the jury so impatient and resentful that it became skeptical of their claims." *Id.* 567 F.2d at 205. The trial court denied these claims, finding that there was "no basis in the record for holding that [defendant

## III.

Garrett's second claim is that there is insufficient evidence to connect him with the crack cocaine and the gun found in the car in which he was riding.

A conviction

must be upheld if, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. In reviewing the jury's verdict, we give the government the benefit of all inferences that may reasonably be drawn from the evidence. Moreover, it is unnecessary that the evidence exclude every reasonable hypothesis except guilt; rather, the evidence must simply be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty. Finally, the essential elements of the charge may be proven by circumstantial, as well as direct evidence.

*United States v. Coronel–Quintana,* 752 F.2d 1284, 1292 (8th Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985) (citations omitted). Additionally, "[i]f the evidence rationally supports two conflicting hypotheses, a reviewing court will not disturb a conviction. Indeed, this court may overturn the verdict only if the evidence properly viewed is such that 'a reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense.'" *United States v. Holm,* 836 F.2d 1119, 1122 (8th Cir.1988) (citations omitted) (emphasis in original).

■ Garrett was convicted of one count of possession with intent to distribute cocaine base, as well as two counts involving the firearm found in the car. Possession of contraband may be actual or constructive. Proof of constructive

possession is sufficient to satisfy the element of knowing possession under § 841(a)(1). A person has constructive possession of contraband if he has "ownership, dominion or control over the contraband itself, *or dominion over the premises in which the contraband is concealed.*" Finally, constructive possession may be joint among several defendants; it need not be exclusive. (Emphasis in original.)

*United States v. Brett,* 872 F.2d 1365, 1369 (8th Cir.), *cert. denied,* 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989) (citations omitted). Constructive possession "need not be proved by direct evidence, but rather may be premised upon circumstantial evidence, which we recognize as being 'intrinsically as probative as direct evidence.'" *United States v. Patterson,* 886 F.2d 217, 219 (8th Cir.1989) (quoting *United States v. Holm,* 836 F.2d at 1124–25). These same guidelines are equally controlling when viewing the firearm charges. *Patterson,* 886 F.2d at 219.

■ Sufficient evidence supports the jury's finding of guilt. At the time of his arrest, Garrett's location in the car placed him right next to the arm rest containing the crack cocaine and directly in front of the area of the dashboard in which the gun was hidden. Garrett would not respond to the police officer's commands to get out of the vehicle for approximately 15 to 45 seconds, during which time he was seen bending forward in the car towards the area where the gun was hidden. The evidence placed Garrett in the car with Williams on the day preceding his arrest, as well as the day of the arrest. Tr. 429–31, 444–46. The evidence also established the close relationship between Williams and Garrett. Locat-

Bubar's counsel's] conduct necessarily caused juror animus against Bubar's co-defendants." *Id.* The Court also found that by keeping themselves separate from Bubar's counsel, the co-defendants' attorneys created an equally plausible inference of juror sympathy towards their clients. *Id.*

The facts in this case are similar to those in *Bubar.* There is no evidence that there was any juror animosity directed towards Garrett because of the antics of Williams's counsel. Sec-

ondly, early in the trial, Garrett and his counsel moved to a separate defense table in order to isolate themselves from Williams and his counsel. Finally, it is possible that Hughes's actions caused the jury to sympathize with Garrett. See also *United States v. Boyd,* 610 F.2d 521 (8th Cir.1979) (holding that allegedly inflammatory and prejudicial arguments by one defendant's counsel did not have an impermissible effect on the trial of another defendant).

ed inside the house at 6900 Walrond, the house which was the subject of the search warrant, were various documents belonging to Garrett. These included a bond receipt bearing the name of Roderick Garrett, as well as Division of Family Services papers bearing that name and Garrett's social-security card. This evidence could reasonably be viewed as establishing a nexus between Garrett and the contraband and thus could support this jury's verdict. See *United States v. Lyles*, 946 F.2d 78 (8th Cir.1991) (where sufficient evidence of guilt consisted of the defendant's position in the car directly in front of the glove compartment where the gun was stored, his furtive movements when the police observed him in the car, and his offer to take the car after his companion's arrest).[6]

### IV.

■ Williams's claims of error can be resolved much more expeditiously. His first claim is that the District Court erred when it failed to grant his untimely motions to suppress evidence. On June 11, 1990, a hearing was held before a magistrate judge, who ordered that all pre-trial motions be filed within twelve days of that date. Williams filed his motions on July 13, 1990, approximately twenty days past the date on which the motions were due. The District Court denied these motions.

Under Rule 12(c) of the Federal Rules of Criminal Procedure, the Court may set "a time for the making of pre-trial motions or requests." Under Rule 12(f), if such a motion has not been filed by a party, that motion is deemed waived unless the party presents good cause for why the motion was not filed at the appropriate time. In the present case, Williams presented no valid reason why his motions were not filed on time. The District Court did not abuse

its discretion when it denied his request to file motions to suppress out of time.

■ Williams's next argument is that he was denied his right to effective assistance of counsel under the Sixth Amendment. Because this issue was not raised below, we have not been presented with an adequate record upon which we can review his claims. As a result, we decline to address this issue on appeal. Williams is free to challenge the effectiveness of his trial counsel through a petition for post-conviction relief under 28 U.S.C. § 2255. See *United States v. Blackman*, 904 F.2d 1250, 1259–60 (8th Cir.1990).

■ Williams's final claim is that several of his convictions violated the Double Jeopardy Clause of the United States Constitution. This claim is raised for the first time on this appeal and therefore is not properly before us.[7] As a result, we decline to address this argument.

Affirmed.

---

6. Although Garrett correctly points out that the gun was recovered by the searching officer while he was lying on his back, reaching behind the dashboard up to his elbow, that officer testified that he chose that method for his own convenience. When questioned further, the officer stated that the gun most certainly could have been reached by someone sitting in the passenger seat and bending forward. Tr. 227–28.

7. Under Fed.R.Crim.P. 12(b)(2), complaints about multiplicity of an indictment and its inherent double-jeopardy problems must be raised prior to trial. *United States v. Herzog*, 644 F.2d 713, 716 (8th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).