# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1121

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Robert Plenty Chief, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 12, 2008
Filed: April 9, 2009

_____

Before MELLOY, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Robert Plenty Chief of aggravated sexual abuse against his step daughter, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2) ("Count 1"); sexual abuse of a minor, in violation of 18 U.S.C. §§ 1153, 2243(a), and 2246(2) ("Count 2"); and abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244(a)(3), and 2246(3) ("Count 3"). Count 1 referenced an incident that occurred in 2004, when the victim was 11 years old, while Counts 2 and 3 referenced an incident that occurred in 2005, when the victim was 12 years old. Plenty Chief appeals, arguing that his convictions on Counts 2 and 3 violate the Double Jeopardy Clause of the Fifth Amendment because "18 U.S.C. § 2243(a) as charged in Count 2, and 18 U.S.C. § 2244(a)(3) as charged in Count 3 are nearly identical statutes, with nearly identical

elements." Additionally, he argues that insufficient evidence supports his convictions on all three counts. We now affirm the judgment of the district court.[1]

## I. *Background*

In 2004, Plenty Chief married Lynnelle Quinn in Eden, South Dakota. Quinn had three children from previous relationships, including an 11-year-old daughter, T.Q. Shortly after the marriage, Plenty Chief, Quinn, and her three children moved to a home in Red Iron, South Dakota. Plenty Chief and Quinn slept in the basement, while the three children all had separate bedrooms.

According to T.Q., one evening in 2004, while T.Q. was sleeping alone in her bed, she was awakened when she heard her bedroom door shut. She looked toward the door, where she saw Plenty Chief standing. Plenty Chief then walked toward T.Q.'s bed, where he sat down. According to T.Q., Plenty Chief smelled strongly of alcohol when he came near her. Eventually, Plenty Chief began rubbing T.Q.'s legs. At the time, T.Q. was wearing a pair of shorts, a T-shirt, and a pair of underwear. T.Q. recalled that, after Plenty Chief rubbed her legs and thighs, he placed one hand inside her underwear, inserted his finger into her vagina, and started grabbing her chest with his other hand. T.Q. stated that "[i]t hurt" when Plenty Chief inserted his finger inside her vagina. T.Q. estimated that Plenty Chief was in her room for 20 to 25 minutes. The incident scared T.Q. and made her reluctant to leave her room. She did not tell anyone about the incident.

In July 2005, when she was 12 years old, T.Q. was once again asleep in her bedroom when she was awakened by the sound of the door slamming shut. According to T.Q., the second incident proceeded much like the first incident. Plenty Chief sat on T.Q.'s bed and began to rub her legs, thighs, and chest. In an effort to get away

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

from Plenty Chief so that his finger would not penetrate her vagina, as in the first incident, T.Q. "kept rolling over." T.Q. estimated that the second incident, like the first, lasted approximately 20 to 25 minutes. As with the first incident, T.Q. did not tell anyone. In October 2005, Plenty Chief and Quinn separated, and Plenty Chief moved out of the house.

In April 2006, T.Q. disclosed Plenty Chief's molestation during a counseled youth group session in which another teenager had recounted an incident of sexual abuse. The group's counselor did not explore the issue in front of the group but later interviewed T.Q. in greater detail. At that time, T.Q. told the counselor that Plenty Chief had sexually abused her. The counselor reported the incident to her supervisor.

In May 2006, the Federal Bureau of Investigation (FBI) interviewed Plenty Chief. Plenty Chief never denied inserting his finger into T.Q.'s vagina but instead maintained that it was an accident. In a recorded statement, Plenty Chief recalled an incident in 2005 in which he entered T.Q.'s bedroom one night when it was raining and attempted to close her window. According to Plenty Chief, when he reached over her bed, he may have rested his hand on her pelvic area. He told the FBI that his hand may have "penetrated a little bit." Later in the interview, he also stated that his finger may have penetrated T.Q.'s vagina up to his first knuckle.

Plenty Chief was charged in a superseding indictment with aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2) ("Count 1"); sexual abuse of a minor, in violation of 18 U.S.C. §§ 1153, 2243(a), and 2246(2) ("Count 2"); and abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244(a)(3), and 2246(3) ("Count 3"). Count 1 referenced the incident that occurred in 2004, when T.Q. was 11 years old, while Counts 2 and 3 referenced the incident that occurred in 2005, when T.Q. was 12 years old.

At trial, during the government's case-in-chief, the jury heard T.Q.'s testimony, as well as Plenty Chief's recorded statement to the FBI. Additionally, pursuant to Federal Rule of Evidence 413, the jury heard testimony concerning another act of sexual abuse Plenty Chief perpetrated on Quinn's other daughter.

At the close of the government's case-in-chief, Plenty Chief made a motion to dismiss, arguing that the government "has not proven [its] case substantially in accordance with Rule 29." Thereafter, the district court and the government engaged in the following exchange:

> THE COURT: Mr. Wright [government counsel], what—in the superseding, in the superseding indictment, is it the Government's position that counts two and three deal with the same alleged incident?
>
> MR. WRIGHT: Yes. If I may, Your Honor?
>
> THE COURT: Yes. Go ahead.
>
> MR. WRIGHT: Count one deals with the first incident that [T.Q.] labeled, which happened shortly after they moved into the blue house that she thought was the summer of 2004 when she was 11. She testified that the defendant walked in there, put his finger in her vagina. If that evidence is believed, the jury could find the defendant guilty.
>
> Counts two and three refer to the second incident, we believe, when the defendant went into the bedroom and attempted a sexual act. Count two charges a sexual act or an attempt, count three charges sexual contact.
>
> Also, Your Honor, when the defendant was interviewed by Agent Burdge [of the FBI], he did say he went in the bedroom and put his finger in the vagina by accident, but he said it happened in May of 2005. So if the jury thinks the defendant's recollection is better than [T.Q.'s], then that incident occurred, a sexual act, in May of 2005. So there's a difference between when she says the finger was in the vagina and when the defendant says that. And it's an important difference because the law

-4-

changed that September. She was 11 during the summer of 2004, she turned 12 in the fall, and then the following incident occurred when she was 12. So depending on who's correct as to when the finger was there, they can find him guilty of count one or count two, or they can find him guilty of all three counts if they believe count two was an attempted sexual act, which the Government asserts that it was, and sexual contact.

THE COURT: So it's your position that the Government can charge a defendant in connection with the same incident as either having sexual contact or attempted sexual contact, and either attempting to commit a sexual act or—well, obviously, there's no evidence that he did engage in a sexual act the second time.

MR. WRIGHT: Other than his statement that it happened in May of 2005, which is within that time period—

THE COURT: Right.

MR. WRIGHT: —when his finger was in the vagina. And the jury could think that his recollection as to when it actually happened is better than hers. So we have to, we have to cover both time periods of the sexual act because this is when she said it occurred and this is when he said it occurred.

THE COURT: You think that the defendant can be convicted of both counts two and three?

MR. WRIGHT: Yes. Yes, I do. If they find that in count one it was a sexual act and [T.Q.] was correct about the date, and count two, it was an attempted sexual act. An attempt at a sexual act.

THE COURT: Well, I'm skeptical about that, but we'll see. Well—

MR. WRIGHT: I don't expect—I'm sorry.

THE COURT: Excuse me. Go ahead.

MR. WRIGHT: I don't expect a guilty verdict on all three counts, but I, but certainly I can see any combination depending on where they think the testimony is accurate. And of course, the court can revisit this if there is a conviction.

During the defense's case-in-chief, Plenty Chief testified that, in the spring of 2005, he entered T.Q.'s bedroom to shut her window because it was going to rain. After entering T.Q.'s bedroom and approaching her bed, Plenty Chief testified as follows:

> I leaned across her bed as I usually did. She usually sleeps at the head of the bed, but—and the window is by the foot of the bed. So when I leaned over where I usually put my hand close to the window, she was laying under the window. Either she was hot or she was cold; I don't know. Because the heat register is right under the window, also. The heat was on and the window was open. I had to choose one of the two. Since it was going to rain and heat register is electric, I chose to shut the window. This happened in a matter of about two or three seconds. Leaning over, I was around 335 pounds at this time, so when I felt myself touch [T.Q.'s] body, I pulled away, readjusted, shut the window, covered [T.Q.] up, and I left the room. And I did not shut the door.

Plenty Chief further testified that while he did touch her in the pelvic area, his "finger did not go in her vagina."

The jury found Plenty Chief guilty on all three counts.

## II. *Discussion*

Plenty Chief makes two arguments on appeal. First, he claims that his convictions on Counts 2 and 3 violate the Double Jeopardy Clause of the Fifth Amendment because "18 U.S.C. § 2243(a) as charged in Count 2, and 18 U.S.C. § 2244(a)(3) as charged in Count 3 are nearly identical statutes, with nearly identical

elements." Additionally, he asserts that Count 3 is a lesser included offense of Count 2.

Second, he asserts that insufficient evidence supports his convictions on all three counts because the jury convicted him "based solely on the testimony of the alleged victim and the victim's sister. No corroborating evidence was presented, and the victim's motive was suspect. Plenty Chief and the victim's mother were in the process of a divorce."

In response, the government first argues that we must review Plenty Chief's double jeopardy argument for plain error because he never asked the district court to dismiss Count 2 or Count 3 based upon that claim. According to the government, while some discussion occurred between the district court and the government regarding whether Plenty Chief could be convicted on both counts, Plenty Chief never moved to dismiss based on this argument or asked the district court for relief regarding the alleged double jeopardy claim.

The government also maintains that it presented ample evidence to sustain Plenty Chief's convictions on all three counts because the jury heard T.Q.'s testimony, Plenty Chief's recorded admissions, and testimony that Plenty Chief sexually abused T.Q.'s sister.

## A. *Double Jeopardy*

We first address Plenty Chief's argument that his convictions on Counts 2 and 3 violate the Double Jeopardy Clause of the Fifth Amendment. Because our review

of the record reveals that Plenty Chief never asked the district court to dismiss either of these counts on such a ground,[2] our review is limited to plain error.[3]

"'Under plain error review, [Plenty Chief] must prove that (1) there was an error, (2) the error was plain, (3) it affects substantial rights, and (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Two Elk*, 536 F.3d 890, 897–98 (8th Cir. 2008) (quoting *United States v. Brandon*, 521 F.3d 1019, 1027 (8th Cir. 2008)). "In considering the facts underlying the allegedly multiplicitous convictions, this court accepts them in the light most favorable to the verdict." *Id.* at 898.

The Double Jeopardy Clause of the Fifth Amendment states that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause "proscribes the imposition of multiple punishments for the same criminal offense." *Two Elk*, 536 F.3d at 898 (internal quotations, alteration, and citation omitted). "Demonstrating that an indictment violates the double

---

[2]Plenty Chief based his motion to dismiss on the ground that the government failed to prove its case, meaning that insufficient evidence existed to support convictions on all three counts.

[3]We recognize that there are "two lines of cases" concerning whether a defendant may raise a double jeopardy challenge for the first time on appeal. *United States v. Two Elk*, 536 F.3d 890, 897 (8th Cir. 2008). In *Two Elk*, the defendant argued that "this court reviews for plain error a double jeopardy challenge not raised in the district court." *Id.* (citing *United States v. Sickinger*, 179 F.3d 1091, 1092–93 (8th Cir. 1999); *United States v. Bercier*, 506 F.3d 625, 633 (8th Cir. 2007)). In response, the government argued that a defendant may not raise such a claim for the first time on appeal. *Id.* (citing *United States v. High Elk*, 442 F.3d 622, 624 (8th Cir. 2006); *United States v. Goodwin*, 72 F.3d 88, 91 (8th Cir. 1995); *United States v. Garrett*, 961 F.2d 743, 748 & n.7 (8th Cir. 1992)). We found it unnecessary to "reconcile these two lines of cases" because we concluded that, even under plain error review, no such error occurred. *Id.* In the present case, because the government argues that plain error review applies, we once again need not resolve these two competing lines of cases.

jeopardy clause requires the defendant to show that the two offenses charged are in law and fact the same offense." *Id.* (internal quotations and citation omitted). In deciding whether the offenses are the same, we "must scrutinize the statute in question to determine whether Congress intended the facts underlying each count to make up a separate unit of prosecution." *Id.* (internal quotations and citation omitted). We determine Congress's intent from "the statutory language, legislative history, and statutory scheme." *Id.* (internal quotations and citation omitted). If we are left in doubt about that intent "(because, for example, Congress's intended unit of prosecution is not clear and unambiguous), this court resolves doubt in favor of lenity for the defendant." *Id.* (internal quotations, alterations, and citation omitted).

We have recognized that "while abusive sexual contact may be a lesser included offense when a single criminal event is involved, aggravated sexual abuse is a different crime, and each may be violated during a series of distinct criminal acts." *United States v. Bercier*, 506 F.3d 625, 633–34 (8th Cir. 2007). In *Bercier*, we found that the defendant's conduct "established that [the defendant] engaged in conduct that violated each statute during the alleged assault." *Id.* at 634. First, we found that "touching and kissing" the victim's breast constituted "abusive sexual contact" under § 2244(a). *Id.* at 634. Second, we concluded that "digital sex" was a "sexual act" "that constituted aggravated sexual abuse when done by force or threat." *Id.* (citing 18 U.S.C. §§ 2241(a)(1), 2246(2)(B)).

But the "real question" in *Bercier* was "how many sex crimes does a defendant commit when he inflicts a series of distinct sexual offenses on the victim during a single incident?" *Id.* We explained that such a question turns on "'whether Congress intended the facts underlying each count to make up a separate unit of prosecution.'" *Id.* (quoting *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005)). To answer this question, we examine "whether Congress intended to punish [the crime] 'as a course of conduct . . . or whether Congress sought to punish separately individual acts within an [ ] episode.'" *Id.* (quoting *Chipps*, 410 F.3d at 448). "If the offense is a

'course-of-conduct offense,' this court then applies 'the impulse test,' treating as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single 'impulse.'" *Two Elk*, 536 F.3d at 899 (internal quotations and citation omitted). But if the offense constitutes a "separate-act offense," then "our inquiry is at an end because there is no double jeopardy problem." *Id.* In *Bercier*, we concluded that the district court did not commit plain error, stating:

> In this case, the district court instructed the jury, without objection, that [the defendant] was charged with two offenses and that it must separately consider the evidence pertaining to each offense. A number of cases have held that state court convictions for multiple sex offenses did not violate the Double Jeopardy Clause if, under state law, "a defendant may receive multiple punishments for numerous sex offenses rapidly committed with the sole aim of sexual gratification." *Rhoden v. Rowland*, 10 F.3d 1457, 1462 (9th Cir. 1993); *see Holdren v. Legursky*, 16 F.3d 57, 62 (4th Cir.), *cert. denied*, 513 U.S. 831, 115 S. Ct. 106, 130 L. Ed. 2d 53 (1994); *State v. James*, 643 S.E.2d 34, 37–38 (N.C. Ct. App. 2007); *State v. Cleveland*, 237 Wis. 2d 558, 614 N.W.2d 543, 550–51 (2000). We have not found a case thoroughly addressing this question in the context of the federal sexual assault offenses here at issue. *Cf. United States v. Torres*, 937 F.2d 1469, 1471, 1475 (9th Cir. 1991); *Pinson v. Morris*, 830 F.2d 896, 897 (8th Cir.1987), *cert. denied*, 488 U.S. 829, 109 S. Ct. 83, 102 L. Ed. 2d 59 (1988). As there was sufficient evidence that [the defendant] committed two distinct sex offenses during the assault, there was no plain error. However, we leave the question open for further development on remand.

506 F.3d at 634 (reversing the district court and remanding because statements made shortly after encounter with defendant were not admissible as prior consistent statements and treating physician's testimony regarding her interview with victim in which she identified abuser were not admissible); *see also Two Elk*, 536 F.3d at 899 (holding that aggravated sexual abuse was a separate-act offense for purposes of double jeopardy analysis and therefore various sex acts in violation of statute within a single course of conduct were separate offenses for double jeopardy purposes).

In the present case, Count 2 charged Plenty Chief with sexual abuse of a minor pursuant to 18 U.S.C. §§ 2243(a) and 2246(2). Section 2243(a) makes it a crime to "knowingly engage[] in a sexual act" with a minor or to "attempt[] to do so." A "sexual act" includes "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C).

Count 3 charged Plenty Chief with abusive sexual contact pursuant to 18 U.S.C. §§ 2244(a)(3) and 2246(3). Section 2244(a)(3) makes it a crime to "knowingly engage[] in or cause[] sexual contact with or by another person, if so to do would violate . . . subsection (a) of section 2243 of this title had the sexual contact been a sexual act." "Sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Under the government's theory, Plenty Chief's touching of T.Q.'s breasts and thighs during the 2005 incident constituted the "sexual contact" forming the basis of Count 3, while Plenty Chief's "attempted sexual act" upon T.Q. during the 2005 incident, as alleged in Count 2, was thwarted when T.Q. rolled way from him, to prevent him from inserting his finger into her vagina, as he had previously done in 2004.

Here, "in light of *Bercier*'s tone and its reference to the state decisions holding various sex acts within a single course of conduct to be separate offenses," *Two Elk*, 536 F.3d at 899, we hold that the district court did not commit plain error by not dismissing Counts 2 and 3 on the basis of double jeopardy. As discussed *infra*, because "there was sufficient evidence that [Plenty Chief] committed two distinct sex offenses during the assault, there was no plain error." *Bercier*, 506 F.3d at 634.

-11-

Furthermore, we note that attempted sexual abuse of a minor and abusive sexual contact have different statutory elements. Attempted sexual abuse of a minor, 18 U.S.C. § 2243(a), requires an attempted sexual *act*, as defined in 18 U.S.C. § 2246(2). In contrast, abusive sexual contact, 18 U.S.C. § 2244(a)(3), *does not* require the sexual act or attempt and requires only sexual *contact*, as defined in 18 U.S.C. § 2246(3).[4]

## B. *Sufficiency of the Evidence*

We now turn to Plenty Chief's argument that insufficient evidence exists to support his convictions on all three counts. "We review the sufficiency of the evidence supporting a conviction in the light most favorable to the Government and draw all reasonable inferences in favor of the jury's verdict." *United States v. Lohnes*, 554 F.3d 1166, 1168 (8th Cir. 2009) (internal quotations and citations omitted). We will only reverse "if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt." *Id.* at 1168–69 (internal quotations and citations omitted).

"The crux of [Plenty Chief's] argument is that the evidence was insufficient because the government's case consisted solely of testimony from [T.Q. and T.Q.'s sister]." *United States v. Fuller*, __F.3d__, 2009 WL 529851, at *2 (8th Cir. Mar. 4, 2009). Plenty Chief "contends that reversal is warranted because no corroborating evidence supported [T.Q. and her sister's testimony]." *Id.* He also argues that T.Q.'s motive was suspect, given that Plenty Chief and her mother, Quinn, were in the process of a divorce. But "the jury was fully apprised of the witnesses' backgrounds and potential motives, and it was the jury's prerogative to decide whether to credit the testimony." *Id.* "It is the sole province of the jury to weigh the credibility of a witness." *United States v. Cvijanovich*, __F.3d__, 2009 WL 454717, at *5 (8th Cir.

---

[4]Resolution of this issue is not without some doubt. The court in *Bercier* recognized the difficult double jeopardy issues implicit in charging a defendant under these two statutes. While we do not find the district court plainly erred because there were two distinct acts, we leave for another day the final resolution of this issue in a case in which the issue has been properly preserved.

Feb. 25, 2009) (internal quotations and citation omitted). Here, the jury was permitted to credit T.Q.'s testimony and reject Plenty Chief's testimony.

T.Q.'s testimony alone is sufficient to support Plenty Chief's convictions on all three counts. Count 1 charged Plenty Chief with aggravated sexual abuse pursuant to 18 U.S.C. § 2241(c). Section 2241(c) prohibits a person from engaging in a "sexual act" with a minor. A "sexual act" includes "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C). T.Q. testified that, in 2004, Plenty Chief inserted his finger in her vagina and that "[i]t hurt."

Count 2 charged Plenty Chief with sexual abuse of a minor pursuant to 18 U.S.C. §§ 2243(a) and 2246(2). A defendant violates this statute by "attempting" to "knowingly engage[] in a sexual act" with a minor, 18 U.S.C. § 2243(a), which includes "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C). T.Q. testified that, in 2005, Plenty Chief once again entered her bedroom and began rubbing her thighs; she thwarted his efforts to penetrate her vagina with his finger, as he had done in 2004, by rolling away from him several times during the incident.

Count 3, which also stemmed from the 2005 incident, charged Plenty Chief with abusive sexual contact. A defendant violates this statute by "knowingly engag[ing] in or caus[ing] sexual contact" with a minor, 18 U.S.C. § 2244(a)(3), including "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). T.Q. testified that, in 2005, Plenty Chief entered her bedroom, sat on her bed, and began rubbing her thighs and chest.

-13-

Based upon the evidence presented at trial, we conclude there was sufficient evidence from which a reasonable jury could find that Plenty Chief committed each of the alleged crimes.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____