# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1555
_____

United States of America

*Plaintiff - Appellee*

v.

Crystal Earth

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: May 15, 2020
Filed: January 11, 2021

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury found Defendant Crystal Earth guilty of assault with a dangerous weapon under 18 U.S.C. § 1153 and § 113(a)(3). On appeal, Earth challenges several evidentiary rulings, a jury instruction, and the sufficiency of the evidence. We affirm.

## I. Background

Earth stabbed her cousin, Wade Sharpe Butte (Sharpe Butte), after an argument in her home on the Rosebud Indian Reservation, near White River, South Dakota. Earth was charged in a two-count indictment. Count One charged Earth with assault with a dangerous weapon, in violation of 18 U.S.C. § 1153 and § 113(a)(3). Count Two charged Earth with assault resulting in serious bodily injury, in violation of 18 U.S.C. § 1153 and § 113(a)(6).

At trial, the defense conceded that Earth stabbed Sharpe Butte but argued that she did so in self-defense. Testimony showed that, on February 25, 2018, Earth was at her home with Sharpe Butte, John Michael Black Elk (Black Elk), Kevin Lee (Lee), and her sister, Alyssa Standing Elk (Standing Elk). Several of the individuals present had been drinking alcohol all day. After midnight, when everyone was quite intoxicated, Sharpe Butte and Earth started to argue. They argued in the bathroom and one of the bedrooms before they ran down a hallway to the kitchen in the back of the house. At some time prior to 3:00 a.m. on February 26, Earth stabbed Sharpe Butte four times, in the torso and face, with her kitchen knife.

At trial, Sharpe Butte testified under a material witness warrant. He was largely unable to remember the events surrounding his stabbing. Earth testified that she and Sharpe Butte had been arguing and that Sharpe Butte had chased her into the kitchen. She testified that Sharpe Butte was aggressive and took off his shirt to prepare to fight. She also testified that, at some point, Sharpe Butte started hitting her arms, at which point she was afraid of him. Earth testified that her sister, Standing Elk, handed her a knife and Earth stabbed Sharpe Butte to defend herself. Standing Elk testified that she believed Sharpe Butte may have been harming her sister so she

went to the kitchen and yelled at him to get off of Earth. Standing Elk also testified that when she yelled at Sharpe Butte, he turned around and was covered in blood. Standing Elk testified that she did not hand Earth a knife, contradicting Earth's testimony. Standing Elk made clear that she was not a direct eyewitness to the stabbing, although she was nearby when it must have occurred. Black Elk and Lee also testified about the arguments that preceded the stabbing. They were both in another room of the house when the stabbing occurred and provided no direct eyewitness account of the incident.

At trial, evidence was presented as to what happened after the stabbing. Earth, Standing Elk, Black Elk, and Lee walked to Black Elk's house, leaving Sharpe Butte wounded in Earth's house. From Black Elk's house, Earth called 911 and told the dispatcher, falsely, that Sharpe Butte had stabbed himself and her. She asked for 911 to check on him. Meanwhile, Sharpe Butte walked to the home of his aunt, Rebecca Sharpe Butte (Rebecca), who is Earth and Standing Elk's mother. Rebecca made a separate call to 911and reported the stabbing to the dispatcher.

Multiple officers responded to the scene. Officer Chad Roe arrived at Rebecca's and, after briefly interviewing Sharpe Butte about how he became injured, drove Sharpe Butte to meet an ambulance. In the ambulance, EMT Katherine O'Brien also asked Sharpe Butte about the source of his injuries before stabilizing him for transport. At the hospital, Sharpe Butte was immediately brought to the trauma room and assessed by Dr. Joseph Lozano. Sharpe Butte told Dr. Lozano that he had been with his cousin and had been caught by surprise and cut with a knife. Dr. Lozano diagnosed Sharpe Butte with lacerations and puncture wounds to his chin, left shoulder, left chest wall, and left center chest. Sharpe Butte had a blood alcohol content of 0.347 and rated his pain 6/10. The doctor's testimony indicated that

-3-

Sharpe Butte's injuries were consistent with being stabbed with a knife. The wounds required various types of sutures and medications. The medical testimony further showed that Sharpe Butte did not suffer from defensive wounds on his arms or hands.

In addition, Officer Andrew Red Bear arrived at Earth's house, where Earth and Standing Elk had returned. Earth told Officer Red Bear that Sharpe Butte had stabbed her but explained that she did not have a wound because a girdle she had been wearing protected her. At trial, Earth admitted this was a lie. After assessing the scene, Officer Red Bear arrested Earth for violations of the tribal criminal code and brought her to the Adult Corrections Facility in Rosebud. At the jail, Earth was assessed for injuries and treated for an abrasion on one of her knees. Earth reported no other injuries and no other injuries were discovered. Earth was assigned a tribal public defender, Annemarie Michaels. At Earth's federal trial, Michaels testified that on February 28 she visited Earth in jail and saw that Earth's arms were "covered in bruises." Michaels testified that she requested jail officials take photos of Earth's injuries. A corrections officer testified that no such request was received and no photos were taken.

At the close of the government's case, Earth moved for judgment of acquittal, which the district court[1] denied. The jury convicted Earth on Count One and acquitted her on Count Two. Following the verdict, Earth again moved for judgment of acquittal, which the district court denied. The court sentenced Earth to 42 months of imprisonment and 3 years of supervised release. On appeal, Earth challenges several evidentiary rulings, a jury instruction, and the sufficiency of the evidence.

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

## II.  Discussion

### A.  Hearsay

Earth argues the district court erred by admitting hearsay statements at trial. We review a district court's rulings regarding the admission of hearsay evidence for an abuse of discretion.  United States v. Brun, 416 F.3d 703, 706 (8th Cir. 2005).

#### i.

First, Earth argues the court erred by allowing a 911 dispatcher and Officer Roe to testify about Rebecca Sharpe Butte's statements.  Over Earth's objection, the district court admitted testimony about, and a recording of, Rebecca stating that "[Earth] stabbed [Sharpe Butte]" and "those girls are gone, but we're trying to see where they're running."  The district court also admitted testimony about Rebecca stating to Officer Roe: "She is running, though."  The district court provided a contemporaneous limiting instruction to the jury, explaining that Rebecca's statements were admitted for the limited purpose of understanding what the dispatcher and officer heard and how they reacted.  During the final instructions to the jury, the court again instructed the jurors that they "may not take anything that Rebecca Sharpe Butte said during the 911 call or while with Officer Roe for the truth of the matters asserted."

The government offered Rebecca's statements to show their effect on the listeners and to introduce the origins of the investigation.  Because the government did not introduce her statements to prove the truth of the matters asserted, the statements were not hearsay and were properly admitted into evidence.  See Fed. R. Evid. 801(c); United States v. Wright, 739 F.3d 1160, 1170 (8th Cir. 2014) ("[A] statement offered to show its effect on the listener is not hearsay." (alteration in original) (quoting United States v. Dupree, 706 F.3d 131, 136 (2d Cir. 2013))); see

also <u>United States v. Running Horse</u>, 175 F.3d 635, 638 (8th Cir. 1999) ("Preliminary information concerning the origin of an investigation, admitted only for that purpose, is not hearsay."). To the extent Earth raises Confrontation Clause concerns, they are not applicable here. Rebecca testified at the trial and was subjected to cross-examination. The court did not abuse its discretion in admitting her statements.

ii.

Next, Earth argues the court erred by allowing EMT Katherine O'Brien and Dr. Lozano to testify about statements Sharpe Butte made during his medical treatment. EMT O'Brien testified that, after she moved Sharpe Butte to the ambulance, she asked him if he had been drinking and he said, "Yes. Lots. All day." EMT O'Brien also testified that she asked Sharpe Butte what happened and he said that he had been sleeping and, when he woke, "the bitch was stabbing me." EMT O'Brien testified that Sharpe Butte did not identify who stabbed him. Dr. Lozano testified that Sharpe Butte went directly to the trauma room upon arriving at the hospital. The doctor testified that Sharpe Butte explained the source of his injuries by stating "he was caught by surprise" and "got cut with a knife." Later, when asked by the government about Sharpe Butte's "attitude or demeanor about what happened," Dr. Lozano testified that Sharpe Butte "was surprised at the attack" and kept saying something like "[y]ou've got to be kidding me."

Over Earth's repeated objections, the district court admitted the above testimony under Federal Rule of Evidence 803(4). Rule 803(4) allows for the admission of a hearsay statement that "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Earth reasserts her objections on appeal, arguing Sharpe Butte's statements were not reasonably pertinent to his diagnosis or treatment.

Our review makes clear that some of Sharpe Butte's statements are easily admissible under Rule 803(4). For example, Sharpe Butte's statement about drinking alcohol all day was reasonably pertinent to his treatment. Similarly, Sharpe Butte's statements explaining he had been stabbed with a knife were about the "cause" of his symptoms and were reasonably pertinent to both diagnosis and treatment. However, some of Sharpe Butte's statements are more problematic because they go beyond merely stating the direct cause of his injuries. That is, when explaining he was stabbed, Sharpe Butte also indicated the stabbing surprised him. Earth argues his statements expressing surprise were not reasonably pertinent to his diagnosis or treatment.

As a general rule, statements made by a patient seeking medical treatment are excluded from the rule against hearsay because "a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility." White v. Illinois, 502 U.S. 346, 356 (1992). In light of this, for statements to be admissible under Rule 803(4), "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and . . . the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985). We have previously explained that "[s]tatements to a medical professional concerning the cause of an injury—'I was assaulted'—are usually admissible under Rule 803(4)." United States v. Bercier, 506 F.3d 625, 632 (8th Cir. 2007). However, statements identifying the assailant, or otherwise assigning fault, are "seldom, if ever," sufficiently related to diagnosis or treatment to be admissible. United States v. Iron Shell, 633 F.2d 77, 84 (8th Cir. 1980).

Earth argues Sharpe Butte's statements were not "reasonably pertinent" to diagnosis or treatment because, by describing the stabbing as surprising, Sharpe Butte's statements assigned fault. We disagree. When asked about the cause of his

injuries, Sharpe Butte made brief statements to the medical professionals who were treating him for traumatic injuries—first in the ambulance and then in the trauma room at the hospital. Given that these statements were made directly to medical professionals attempting to treat Sharpe Butte's injuries, there is no question these statements were made for any other reason than "medical diagnosis or treatment." Fed. R. Evid. 803(4)(A). Further, "a patient's statement describing how an injury occurred is pertinent to a physician's diagnosis and treatment." Bercier, 506 F.3d at 630 (quoting United States v. Gabe, 237 F.3d 954, 957–58 (8th Cir. 2001)). Sharpe Butte's statements concerned the cause of his multiple injuries. Testimony made clear that the medical team was treating deep, potentially complicated puncture wounds, as consistent with Sharpe Butte's statements about the cause of his injuries. Even if Sharpe Butte's descriptive statements may have not been fully necessary for treatment and diagnosis, they were reasonably pertinent and admissible under Rule 803(4).[2]

As a final matter, because "a declarant's statements relating the identity of the individual allegedly responsible for his injuries or condition 'would seldom, if ever,' be reasonably pertinent to treatment or diagnosis," Renville, 779 F.2d at 436 (quoting Iron Shell, 633 F.2d at 84), Sharpe Butte's statements identifying Earth as his assailant would normally be problematic. However, Earth's opening statement conceded she was the assailant and framed the case as about her ability to defend herself when attacked. By the time medical testimony came in, other evidence had identified Earth as the assailant. Therefore, any of Sharpe Butte's statements that identified Earth were cumulative and harmless. See United States v. Two Elk, 536 F.3d 890, 903 (8th Cir. 2008) (finding erroneously admitted hearsay statements

_____

[2]The district court ruled Sharpe Butte's statements were, alternatively, admissible as excited utterances and because they had the "guarantees of trustworthiness" normally meriting an exception to the rule against hearsay. We will not address these alternative arguments.

cumulative and therefore harmless).  Further, to the extent Dr. Lozano testified about Sharpe Butte's attitude and demeanor, hearsay concerns were not implicated because Dr. Lozano's impressions relayed no out-of-court statement.  Similarly, Dr. Lozano's testimony that Sharpe Butte repeatedly stated, "You've got to be kidding me," was not offered for the truth of the matter asserted, thus avoiding any hearsay concerns.

iii.

Lastly, Earth argues the district court erred by admitting Sharpe Butte's statements captured on (1) Officer Roe's body camera while at Rebecca's house, and (2) Officer James Scott's body camera while at the hospital.  In both instances, the government offered the body camera footage into evidence over Earth's objection that the footage contained hearsay and improper bolstering. Earth did not object to any statements with specificity.  On appeal, the parties provide specific statements for us to review.  The first is a conversation between Officer Roe and Sharpe Butte at Rebecca's house, which was recorded on Officer Roe's body camera:

> **Roe:** Can you tell me what happened?
> **Sharpe Butte:** I got stabbed up.
> **Roe:** Ok, well, what happened before that? Did you guys get into it over something?
> **Sharpe Butte:** No.
> **Roe:** No?
> **Sharpe Butte:** Oh, yeah, uh, her daughter…ugh [groaning].
> . . .
> **Sharpe Butte:** She started getting mad at me.
> **Roe:** Okay.
> **Sharpe Butte:** And then, she's like "fuck that . . . [inaudible]." I was like, "hey, hey, hey—what?"
> . . .
> **Roe:** Did she get stabbed too, or no?
> **Sharpe Butte:** Oh, fuck no!
> **Roe:** You don't know, okay.

**Sharpe Butte:** I didn't!
**Roe:** You stabbed her too?
**Sharpe Butte:** Fuck you! I didn't say that.

At trial, the district court overruled Earth's general objection to Officer Roe's body camera footage, seemingly because Sharpe Butte's statements were admissible as excited utterances under Rule 803(2). Earth now argues the statements were improperly admitted as hearsay and prejudicial because "[Sharpe Butte] communicated that [Earth] got mad and stabbed him by surprise, without being in danger herself." The government argues the statements were properly admitted under Rule 803(2).

As an initial matter, the record does not make clear the government's purpose for offering these statements at trial. Officer Roe did not testify as to these statements in particular—instead his testimony focused on the investigative process in general and his transport of Sharpe Butte to the ambulance. On our review, we find some of Sharpe Butte's statements to be much more problematic than others. For example, Sharpe Butte stated "I was stabbed up," and "She started getting mad at me." These statements appear to have been offered for the truth of the matters asserted. However, they also appear to be excited utterances, admissible under Rule 803(2). Rule 803(2) excepts from the rule excluding hearsay an out-of-court "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). Sharpe Butte made these statements soon after he was stabbed four times and before he had received any medical treatment. Given their proximity to the stabbing and the subject matter of the statements, the district court did not abuse its discretion in admitting these statements as captured on Officer Roe's body camera, under Rule 803(2).[3] See United States v.

_____

[3]Sharpe Butte's statements as to what he and Earth said during the stabbing are hearsay within hearsay. At both levels, they are admissible as excited utterances. See Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against

Graves, 756 F.3d 602, 605 (8th Cir. 2014) (explaining the factors relevant to Rule 803(2) analysis); United States v. Clemmons, 461 F.3d 1057, 1061 (8th Cir. 2006) (same).  As to Sharpe Butte's other statements made in conversation with Officer Roe, it is difficult to understand how they could have been offered for the truth of the matters they assert.  In that way, these statements were not hearsay and were properly admitted into evidence.

Next, on Officer Scott's body camera footage at the hospital, Sharpe Butte responded to a question by Officer Estes, who asked him about the color of the knife used to stab him.  Sharpe Butte responded: "I don't even know.  Because uh, I just felt like after she did it, I was like, 'Fuck are you serious? Are you serious?'  And she took off, 'I'm sorry, I'm sorry, I'm sorry.' And I don't know."  At trial, Earth again raised her general objection to the admission of Officer Scott's body camera footage, arguing it was hearsay and improper bolstering.  The district court overruled the objection.  It is once again difficult to ascertain from the record the government's purpose in admitting this evidence, nor does the record reflect the specific basis for overruling the objection.  However, "we may affirm a district court's judgment on any basis supported by the record." United States v. Levine, 477 F.3d 596, 601 (8th Cir. 2007) (quotation omitted).

Officer Scott testified generally about the evidence he collected from Sharpe Butte at the hospital, including Sharpe Butte's bloodied clothing and photographs of his injuries.  To the extent Officer Scott's body camera footage was offered to prove the truth of the matters asserted by Sharpe Butte's recorded statements, the footage appears to include "[h]earsay within hearsay." See Fed. R. Evid. 805.  We must analyze the statements at each level.

---

hearsay if each part of the combined statements conforms with an exception to the rule.").

At the first level of analysis, we find Sharpe Butte's statements admissible. Sharpe Butte indicated that, immediately after he was stabbed, he said "Fuck are you serious? Are you serious?" Because Sharpe Butte first uttered these statements right after being stabbed, we have no difficulty finding these to be excited utterances admissible under Rule 803(2). And, Sharpe Butte stated "And she took off, 'I'm sorry, I'm sorry, I'm sorry.' And I don't know." As interpreted by the parties and the district court, Sharpe Butte seems to be quoting Earth as saying "I'm sorry, I'm sorry, I'm sorry," immediately after she stabbed him. In this context, Earth's own statements are the admissions of a party opponent, admissible under Federal Rule of Evidence 801(d)(2)(A).

At the next level of analysis, Sharpe Butte restated all of the above information to Officer Estes, which was recorded on the body camera. At this level, Sharpe Butte's statements were offered for the truth of the matters asserted—that he and Earth made those statements in the past. Arguably, the fact that the statements were on body camera footage partially removes some concerns about the general accuracy of relating prior statements. Still, these re-statements did not fit neatly within a hearsay exception and were improperly admitted. Fed. R. Evid. 802.

Although we find Sharpe Butte's statements at the hospital should not have been admitted, we will not reverse an erroneous evidentiary ruling if the error was harmless. United States v. McPike, 512 F.3d 1052, 1055 (8th Cir. 2008). Under Federal Rule of Criminal Procedure 52(a), an evidentiary error is harmless if, based on the entire record, the substantial rights of the defendant were unaffected, and the error did not influence or had only a slight influence on the verdict. See id.; see also United States v. Marrowbone, 211 F.3d 452, 455 (8th Cir. 2000) ("In other words, we will reverse only if the jury may have been substantially swayed by the improperly admitted evidence.").

Earth argues that the improper admission of hearsay evidence in this case calls for a new trial, like improperly admitted hearsay did in United States v. Bercier, 506 F.3d 625, 633 (8th Cir. 2007). There, we ordered a new trial based on the district court's improper admission of hearsay testimony by a physician recounting a victim's statements about her assault. Id. In Bercier, we found the hearsay prejudicial because the case lacked physical evidence, and the prosecution "turned entirely on the credibility of [the victim]," which was bolstered by the hearsay. Id.

We find this case distinguishable from Bercier. As an initial and critical matter, the government presented a substantial amount of physical evidence that tended to show Sharpe Butte was stabbed without having a chance to defend himself. Evidence was presented to show he was stabbed quickly and without being able to use his arms or hands to block the knife. Even so, Earth argues that erroneously admitted hearsay evidence was the best evidence offered by the government to defeat her claim of self-defense, and that, without it, the jury's verdict may have been different.[4] Based on the record, we cannot agree. Most of what Earth argues was improperly admitted hearsay, we have found admissible. To the extent limited hearsay was erroneously admitted, it made little difference in the case. Although the government's case against Earth relied partially on circumstantial evidence—necessary because both direct eyewitnesses to the stabbing were intoxicated at the time it occurred—it did not turn exclusively on the credibility of any single witness as in Bercier. Instead, the jury was able to give weight to a variety of different testimony and evidence. In the end, there was ample evidence the jury

---

[4]Earth also contends that the fact the jury acquitted her of assault resulting in serious bodily injury is indicative of the overall weakness of the government's evidence against her and thus the prejudicial nature of the hearsay evidence. We disagree. The more obvious reason the jury could have acquitted her on Count Two is that the jury did not believe Sharpe Butte's injuries were sufficiently serious. See United States v. Two Eagle, 318 F.3d 785, 791 (8th Cir. 2003) ("Whether an injury is serious presents a question of fact for the jury.").

-13-

could have relied upon in finding Earth did not act in self-defense. Reviewing the entire record, we conclude the improperly admitted hearsay testimony "did not influence or had only a slight influence on the verdict." McPike, 512 F.3d at 1055 (quoting United States v. Lewis, 483 F.3d 871, 875 (8th Cir. 2007)).

## B. Jury Instruction

Next, Earth argues the district court erred in refusing to give her requested jury instruction on self-defense. We review for abuse of discretion. United States v. Farlee, 757 F.3d 810, 816 (8th Cir. 2014). "[A] party is entitled to an instruction on its theory of the case so long as it is legally correct and there is factual evidence to support it." Id. (citation omitted).

Earth requested that the instruction include the following language: "A person acting in self-defense is not required to retreat before resorting to the use of force." The district court rejected Earth's request and instead gave the Eighth Circuit Model Jury Instruction, which is based on United States v. Walker, 817 F.2d 461, 463 (8th Cir. 1987), and is legally correct:

> If a person reasonably believes force is necessary to protect herself from what she reasonably believes to be unlawful physical harm about to be inflicted by another and uses that force, then she acted in self-defense. If a person acts in self-defense she is not guilty of the charged offenses. However, self-defense which involves the use of force likely to cause death or great bodily harm is justified only if the person reasonably believes the force is necessary to protect herself from what she reasonably believes to be a substantial risk of death or great bodily harm.

The only way in which the concept of "retreat" was presented to the jury was that multiple people testified that the stabbing took place in the kitchen, near the back door of the house. The government did not imply or argue that Earth had a duty to

retreat when it was otherwise arguing that Earth's actions lacked justification. Therefore, we find no abuse of discretion in the court's decision to not include language about retreat when instructing the jury. The instruction provided the jury with an adequate and correct instruction as to Earth's theory that self-defense justified her actions. See Farlee, 757 F.3d at 818 (holding that the district court was not required to give defendant's proposed self-defense instruction as to the concept of "retreat" where "retreat" was not particularly relevant to the issues in the case or to the defendant's theory of the case); Walker, 817 F.2d at 463 (same).

## C. Sufficiency of the Evidence

Finally, Earth argues she was entitled to a judgment of acquittal because she acted in self-defense and the evidence was insufficient to prove otherwise. "We review the denial of a motion for judgment of acquittal de novo." United States v. Sainz Navarrete, 955 F.3d 713, 718 (8th Cir. 2020). "We apply the same standard of review to the district court's ruling on a motion for judgment of acquittal as we do to a sufficiency of the evidence challenge." United States v. Clark, 668 F.3d 568, 573 (8th Cir. 2012) (quoting United States v. Cook, 603 F.3d 434, 437 (8th Cir. 2010)). "Taking the evidence in the light most favorable to the verdict, we consider whether a rational jury could have found the elements of the offense beyond a reasonable doubt." United States v. Owens, 966 F.3d 700, 708 (8th Cir. 2020). "We will reverse only if no reasonable jury could have found the accused guilty beyond a reasonable doubt." United States v. Two Eagle, 318 F.3d 785, 790 (8th Cir. 2003).

In order to convict Earth of assault with a dangerous weapon, the government needed to prove beyond a reasonable doubt that she (1) voluntarily and intentionally assaulted the victim, (2) used a dangerous weapon, and (3) intended to do bodily harm. United States v. Herron, 539 F.3d 881, 886 (8th Cir. 2008) (citing 18 U.S.C,

§ 113(a)(3)).[5]  Because Earth sufficiently raised the issue of self-defense, the government also needed to prove beyond a reasonable doubt that the she did not act in self-defense.  United States v. Milk, 447 F.3d 593, 598 (8th Cir. 2006) (placing the burden on the government).

Earth's theory at trial was that Sharpe Butte was aggressive and fighting with her in her own home.  She argued the stabbing was justified because she feared for her safety.  On appeal, Earth points to evidence in the record, including her own testimony, tending to show Sharpe Butte was aggressive and either imminently about to physically attack her or already attacking her when she stabbed him.  It is true that evidence to this effect was presented at trial.  However, the record is replete with contradictory evidence, which the jury reasonably could have credited.  Critically, the government put forth evidence tending to show that by using a knife to assault Sharpe Butte, Earth responded to their argument with disproportionate force. The use of "force in self defense that is likely to cause death or great bodily harm to the other person is justified only if the person acting in self defense reasonably believes the force he is using is necessary to protect himself from death or great bodily harm." Walker, 817 F.2d at 463 (quoting district court jury instructions similar to those offered here).  The government also elicited testimony that could have led the jury to doubt Earth's credibility.  "The jury has the ultimate task of determining the facts and assessing the credibility of the witnesses."  Farlee, 757 F.3d at 815.  Looking at all of the evidence, and drawing all inferences in favor of the jury's verdict, a reasonable jury could have found beyond a reasonable doubt that she did not act in self-defense.

We affirm the judgment of the district court.

_____

_____

[5]Before trial, the parties stipulated to the facts that Earth was an "Indian" and the alleged incident occurred "in Indian Country."  See 18 U.S.C. § 1153.

-16-