# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1590

_____

United States of America

*Plaintiff - Appellee*

v.

Warren Lee Mackey

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 16, 2022
Filed: October 2, 2023

_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury convicted Warren Mackey of one count of aggravated sexual abuse of a child under the age of 12 and one count of abusive sexual contact. He appeals, challenging two evidentiary rulings at trial and the restitution order.

# I.

In early August 2019, E.M., then 11 years old, was staying with Mackey, her father, at his house in Niobrara, Nebraska. On August 4, they went out to eat, stopping at several bars over the course of the evening. By the time they returned home at about 11:30 p.m., E.M believed that Mackey was intoxicated.

Once home, they both went to Mackey's room, where they ate, talked, and watched television, before falling asleep on Mackey's bed. At some point, E.M. woke up, because she felt Mackey behind her, "kind of spooning [her]," with his "hand grasping [her] breast," "[k]ind of like squeezing" it. E.M. "thought it was weird." While E.M. was still awake, Mackey went to use the bathroom, then he got back in bed, and she "went back to sleep." E.M. woke up again when she felt Mackey's "hand . . . sliding down [her] pants." Mackey "continued to put his hand in [her] pants . . . and into [her] underwear." At first E.M. "just laid there" because she was "shocked and scared. But after a few moments, [she] grabbed his hand, pulled it out, and ran to [her] room." Mackey did not say or do anything in response.

The following morning at breakfast, Mackey asked E.M., "Did I touch you last night?" E.M. told him, "[y]es." Mackey then instructed E.M. not to tell her mother. E.M. and Mackey did not speak about the incident again, and E.M. did not tell her mother or her siblings what happened.

In September 2019, E.M. told her friends K.K. and M.P. about the incident with her father. K.K. then told the school counselor, Kayla Baker, who called E.M. to her office a day or so later. At that point, E.M. "came out with everything." Baker then contacted the school's principal, Angie Guenther, and contacted E.M.'s mother, who came to the office to meet with E.M., Baker, and Principal Guenther. Principal Guenther then contacted FBI Agent Jeffery Howard, who arranged for E.M. to be interviewed by a forensic examiner at the Child Advocacy Center. Agent Howard also interviewed Mackey. When Agent Howard told Mackey what E.M. had alleged, Mackey said he did not remember what happened that night because he was sleeping,

although he did have a dream about grabbing a breast and rubbing the outside of someone's leg. He admitted that he asked E.M. the following morning, "Did I touch you?"

Mackey was indicted on one count of aggravated sexual abuse of a minor, in violation of 18 U.S.C. §§ 2241(c) and 1153 (Count 1), and one count of abusive sexual contact, in violation of 18 U.S.C. §§ 2244(a)(5) and 1153 (Count 2). He pleaded not guilty. After a three-day trial, a jury found Mackey guilty on both counts. The district court imposed a 360 month sentence on Count 1 and a concurrent 120 month sentence on Count 2, concurrent 5-year terms of supervised release, and $2,727.80 in restitution. Mackey appeals.

## II.

First, Mackey argues that the district court erred when it allowed K.K., M.P., Baker, and Principal Guenther to testify. "We review the district court's evidentiary rulings for clear abuse of discretion." United States v. Williams, 41 F.4th 979, 984 (8th Cir. 2022) (quoting United States v. Pirani, 406 F.3d 543, 555 (8th Cir. 2005) (en banc)). "Reversal is warranted only if the district court's evidentiary rulings constitute a clear and prejudicial abuse of discretion or when the ruling affected substantial rights or had more than a slight influence on the verdict." United States v. Oldrock, 867 F.3d 934, 938 (8th Cir. 2017) (cleaned up).

To the extent the government offered the testimony of these witnesses to explain "the origins of the investigation," the evidence was properly admitted. See United States v. Earth, 984 F.3d 1289, 1294 (8th Cir. 2021); United States v. Running Horse, 175 F.3d 635, 638 (8th Cir. 1999) ("Preliminary information concerning the origin of an investigation, admitted only for that purpose, is [relevant and admissible]." (citing United States v. Cruz, 993 F.2d 164 (8th Cir. 1993))). These four witnesses testified about how and when they learned about the incident between E.M. and Mackey and the steps they took in response. None of these witnesses described any details about the incident itself.

However, the testimony elicited from these witnesses went beyond explaining "the origins" of the investigation. K.K., for example, also testified that E.M. told her about the incident because "it was bothering her and she needed somebody to talk to." She also explained that she went to Baker "[b]ecause it was the right thing to do." When Baker testified, she described E.M. as "tearful" and said E.M. "broke down pretty quickly." Baker also told the jury that she learned E.M. was self-harming, which is what prompted her to call E.M. into her office. Principal Guenther, too, testified that E.M. was "crying and shaking" when she was in her office. Baker also described the demeanor of E.M.'s mother. This additional testimony said nothing about how the investigation got started. It worked only to bolster E.M.'s credibility and to help rebut an allegation of recent fabrication.

Nevertheless, the additional testimony was cumulative of other admissible testimony. See United States v. DeMarce, 564 F.3d 989, 997 (8th Cir. 2009). E.M. herself testified that she was "upset" and "crying" when she was in Baker's office, and she said she engaged in self-harm as a means of coping. E.M.'s mother herself testified that she "started crying" when she learned what happened. We have recognized that it is possible that an "extra helping of evidence can be so prejudicial as to warrant a new trial." DeMarce, 564 at 998 (quoting United States v. Bercier, 506 F.3d 625, 633 (8th Cir. 2007)). But we do not find such prejudice here. Because the improper testimony repeated what E.M. and her mother themselves told the jury, we conclude that "it had little or no influence on the verdict," see United States v. McPike, 512 F.3d 1052, 1055 (8th Cir. 2008), and it is not grounds for reversal.

**III.**

Next, Mackey argues that the district court erred in allowing Agent Howard to offer expert testimony about the female anatomy, because the government did not provide proper notice as required by Federal Rule of Criminal Procedure 16(a)(1)(G). "We review the court's decision to admit expert testimony for abuse of discretion." United States v. Kenyon, 481 F.3d 1054, 1061 (8th Cir. 2007).

Count I of the indictment charged Mackey with aggravated sexual abuse, specifically, that he engaged in a sexual act with E.M. by "digitally penetrat[ing] [her] vulva with his finger." At trial, E.M. testified about Mackey's conduct, stating that his hand was "touching" the "top" of her "vagina," which she clarified was her "clitoris." She also said that Mackey was "moving" his finger around her clitoris. At issue here is Agent Howard's later, more detailed testimony about female genitalia. Specifically, he testified that, "The vulva is the genital area of the female consisting of the outer portion which is the labia . . . majora, the inside lips of the labia minora, the vaginal cavity or entrance, the urethra, and the clitoris." Mackey lodged a timely objection, arguing that a proper foundation had not been, and could not be, laid for Agent Howard to discuss female anatomy.

We assume, without deciding, that Mackey is right that Agent Howard's testimony about female anatomy qualified as expert testimony. And we observe that there is no dispute that the government failed to offer notice and a summary of Agent Howard's testimony as required by Rule 16(a)(1)(G). But to show reversible error from a violation of the notice requirements of Rule 16(a)(1)(G), as Mackey recognizes, he "must demonstrate prejudice resulting from the district court's decision to admit the contested testimony." United States v. Camacho, 555 F.3d 695, 704 (8th Cir. 2009) (quoting Kenyon, 481 F.3d at 1062).

Mackey's argument on this point is brief. But he says that given proper notice, he would have sought to exclude the disputed testimony, asserting there was a "substantial probability that this evidence would not have come in." Despite this general assertion, in the context of the facts of this case and the testimony given by Agent Howard, Mackey has failed to sufficiently demonstrate prejudice caused by the lack of notice.

In support of his contention that the contested testimony would have been excluded, Mackey says that "being an FBI agent who investigated sexual assault cases does not make one an expert in the field of female anatomy." Mackey is correct that every FBI agent does not have the same set of expert credentials or experiences.

But Mackey did not cross examine Agent Howard about his professional qualifications, or challenge his potentially relevant credentials or his more than two decades of experience—his participation in over one hundred child sexual abuse cases, how he had to develop a knowledge of female anatomy while investigating sex abuse crimes because federal statutes differ in their applicability depending on where and how a victim was touched, and his work with rape kits—to show how they might be lacking. See United States v. Anderson, 446 F.3d 870, 875 (8th Cir. 2006) ("Rule 702 does not rank academic training over demonstrated practical experience."). Mackey's conclusory argument, which fails to engage with this particular witness' professional experience, is insufficient to show how, with earlier notice, he could have been able to force this testimony's exclusion. See Kenyon, 481 F.3d at 1062.

Similarly, Mackey never cross examined Agent Howard's definition of vulva, nor requested a continuance to respond to the testimony. Mackey does not explain how he would have responded differently had he received timely notice because he has not asserted, at trial or on appeal, that Agent Howard's description of the vulva was inaccurate. See United States v. Waln, 916 F.3d 1113, 1115 (8th Cir. 2019) (finding no reversable error where district court admitted FBI agent's testimony despite lack of Rule 16(a)(1)(G) notice, because defendant had not overcome "high hurdle" of proving substantial prejudice where the substance of the agent's testimony was not disputed by defendant and indeed was beyond dispute as a factual matter). There is no suggestion that Mackey would have presented evidence of a definition of vulva that was different than Agent Howard's definition—that is, that the clitoris is not part of the vulva—if only he had been given proper notice under Rule 16(a). See id. at 1116 (observing that when a defendant moves to exclude evidence due to a Rule 16(a)(1)(G) violation, "prejudice . . . requires more than that the evidence could have been excluded[; i]t requires that the error 'was prejudicial to the substantial rights of the defendant.'" (quoting United States v. Pelton, 578 F.2d 701, 707 (8th Cir. 1978))). Because Mackey has not shown how "if had he received earlier notice of this evidence, then he would have been able to . . . present

a more effective defense[, he] . . . has not established prejudice, and the admission of the testimony was not reversible error." <u>Kenyon</u>, 481 F.3d at 1062.

## IV.

Finally, Mackey argues that the district court erred by awarding restitution without resolving his objections. After the incident giving rise to Mackey's prosecution, E.M. attended mental health therapy sessions for more than a year. At sentencing, the government requested restitution in the amount of $2,727.80, which reflected the wages E.M.'s mother lost by taking E.M. to her therapy sessions. Mackey objected. The district court deferred ruling on the matter of restitution to allow for supplemental briefing.

In its supplemental brief, the government argued that restitution for lost wages was mandatory under 18 U.S.C. § 2248, and that the amount was supported by documentation submitted in advance of sentencing. The government also requested a hearing should Mackey continue to dispute the restitution amount. In response, Mackey argued that neither E.M. nor her mother was a "victim" for purposes of restitution, and that the underlying documentation cited in the presentence report was insufficient to support the amount requested. Mackey also asked for a hearing.

The district court did not hold a hearing. Instead, it entered an order that stated that it had "reviewed the presentence report concerning restitution" and the parties' briefs, and found that "the government's requested restitution is authorized by law and is unrebutted by any evidence." The court awarded E.M. $2,727.80 for her mother's lost wages.

"We review the district court's decision to award restitution for abuse of discretion, but any fact findings as to the amount are reviewed for clear error." <u>United States v. Carpenter</u>, 841 F.3d 1057, 1060 (8th Cir. 2016) (quoting <u>United States v. Chalupnik</u>, 514 F.3d 748, 752 (8th Cir. 2008)). Here, although Mackey objected to the relevant paragraphs in the presentence report, the district court did

not resolve those objections prior to ordering restitution. <u>See</u> <u>United States v. Young</u>, 272 F.3d 1052, 1056 (8th Cir. 2001) (stating that a district court must resolve any disputes regarding "the amount or type of restitution by the preponderance of the evidence"). The burden lies with the government to "demonstrate[e] the amount of the loss sustained by a victim as a result of the offense." <u>Id.</u> (citing 18 U.S.C. § 3664(e)). Without any findings from the district court to resolve Mackey's objections, we are unable to review whether the government met its burden of establishing restitution by a preponderance of the evidence.

## V.

We affirm Mackey's conviction. We remand to the district court for further proceedings to resolve the parties' disputes about the amount, if any, of restitution owing. We affirm the sentence in all other respects.

_____